Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED
*June 12, 2024*
Nathan Ochsner, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| v. | § § | **CRIMINAL NO.** 4:24-cr-325 |
| **LESLIE CHINEDU MBA (1)** | § | **FILED UNDER SEAL** |
| **GRACE MORISHO (2)** | § | |
| **RODGERS ELIAS KADIKILO (3)** | § | |
| **KRISTIN LYNN SMITH (4)** | § | |
| **ALEXANDRA GOLOVKO (5)** | § | |

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

**A.   INTRODUCTION**

At all times material to this Indictment:

1. The defendants, **LESLIE CHINEDU MBA** ("**MBA**"), **GRACE MORISHO** ("**MORISHO**"), **RODGERS ELIAS KADIKILO** ("**KADIKILO**"), **KRISTIN LYNN SMITH** ("**SMITH**"), and **ALEXANDRA GOLOVKO** ("**GOLOVKO**"), resided in Houston, Texas.

2. The term "business email compromise" ("BEC") refers to a sophisticated fraud often targeting businesses involved in making wire transfers. A BEC is accomplished by compromising and/or mimicking ("spoofing") legitimate business email accounts, often through social engineering or computer intrusion techniques.

1

Perpetrators of BEC fraud then use the email access to cause the target company, or individuals involved in legitimate business transactions with the target company, to conduct unauthorized transfers of funds to money mules' bank accounts.

3. The term "romance scam" refers to an online fraud that often preys on vulnerable people. Scammers create fake online profiles and attempt to build emotional attachments with potential victims until the victim is comfortable sending money.

4. A "money mule" is a person recruited to open a bank account, or use an existing bank account under their control, for the purpose of receiving illegally acquired money and then transferring some or all of the funds, often through electronic means, on behalf of or at the direction of others. A money mule is typically allowed to keep a percentage of the funds deposited into their account as a payment for their services.

**B.     THE CONSPIRACY**

5. From at least in or about 2018 through at least in or about 2023, in the Southern District of Texas and elsewhere,

**LESLIE CHINEDU MBA (1)**
**GRACE MORISHO (2)**
**RODGERS ELIAS KADIKILO (3)**
**KRISTIN LYNN SMITH (4)**
**and**
**ALEXANDRA GOLOVKO (5),**

defendants herein, participated in a conspiracy to defraud victims and to launder proceeds received from victims. Defendants, and others known and unknown to the Grand Jury, did willfully and knowingly combine, conspire, confederate, and agree together and with each other to execute a scheme and artifice to defraud and to obtain money, funds, and property by means of false and fraudulent pretenses, representations and promises and did transmit and cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals and sounds, in violation of Title 18, United States Code, Section 1343.

C.     **MANNER AND MEANS OF THE CONSPIRACY**

6.     The defendants, and their co-conspirators known and unknown to the Grand Jury, sought to accomplish the purpose of the conspiracy by engaging in business email compromise schemes to deceive customers of companies and romance scam victims, including the Victims in this Indictment, into sending money to a bank account under the defendants' control which was then quickly transferred and disbursed to other bank accounts under co-conspirators' control.

D.     **ACTS IN FURTHERANCE OF THE CONSPIRACY**

7.     From at least in or about 2018 up to and including in or about 2023, the defendants and their co-conspirators, located inside and outside of the United States, conducted BEC frauds and romance scams on unsuspecting victims. Once the BEC frauds and romance scams were initiated, **MBA** was contacted by his co-

conspirators to either act as a money mule for the BEC frauds and romance scams himself or recruit his co-defendants as money mules to open bank accounts or use existing bank accounts to receive funds of the BEC frauds and romance scams.

*Wholesale Wine BEC*

8. By at least in or about June 2020, co-conspirators of **MBA** had obtained unauthorized access to the business email account of an employee ("EMP-1") of Company A, a wholesale wine and spirits company in Las Vegas, Nevada. EMP-1's email was then used to send fraudulent interstate wire instructions to Victim 1, a wholesale wine and spirits company in Stamford, Connecticut, for a payment that Victim 1 owed to Company A.

9. In response to those fraudulent wire instructions, and believing they were communicating with Company A, on or about July 3, 2020, Victim 1 caused its bank to send three interstate wires totaling $896,565.30 to an account controlled by **MBA** at Wells Fargo Bank. The Wells Fargo bank account had been opened by **MBA** using an assumed name certificate of "MBA Entertainment LLC" in November 2019 in Harris County, Texas.

10. After Victim 1's funds were fraudulently received in **MBA**'s Wells Fargo account, the funds were laundered in a manner designed to conceal the source, ownership, and control of the fraudulently obtained funds. Among other things,

Victim 1's funds sent to **MBA**'s Wells Fargo account were used by **MBA** to purchase a private residence and luxury vehicle.

*First Automobile Dealership BEC*

11. By at least in or about April 2021, co-conspirators of **MBA** had obtained unauthorized access to the business email account of an employee ("EMP-2") of Company B, an automobile dealership in Fox Lake, Illinois. EMP-2's email was then used to send fraudulent interstate wire instructions to Victim 2, an automobile leasing corporation in Farmington, Connecticut, for a payment that Victim 2 owed to Company B.

12. In response to those fraudulent wire instructions, and believing they were communicating with Company B, on or about April 19, 2021, Victim 2 caused its bank to send an interstate wire totaling $96,947.60 to an account controlled by **MORISHO** at BBVA. The BBVA bank account had been opened by **MORISHO** using an assumed name certificate of "Grace Morisho Catering Services" in November 2020 in Harris County, Texas.

13. After Victim 2's funds were fraudulently received in **MORISHO**'s BBVA account, the funds were laundered in a manner designed to conceal the source, ownership, and control of the fraudulently obtained funds. On April 20, 2021, **MORISHO** withdrew $74,000.00 of Victim 2's funds from her BBVA bank account via cashier's check to "MBA ENTERTAINMENT LLC." The cashier's

check was deposited in an account controlled by **MBA** at Bank of America ("BOA") on April 20, 2021. **MBA** then directed a portion of Victim's 2 funds to other accounts under the control of co-conspirators.

*Second Automobile Dealership BEC*

14. By at least in or about July 2021, co-conspirators of **MBA** had obtained unauthorized access to the business email account of an employee ("EMP-3") of Company C, an automobile dealership in Louisville, Kentucky. EMP-3's email was then used to send fraudulent interstate wire instructions to Victim 3, an individual vehicle purchaser in Kansas City, Missouri, for a payment that Victim 3 owed to Company C.

15. In response to those fraudulent wire instructions, and believing they were communicating with Company C, on or about August 2, 2021, Victim 3 caused its bank to send an interstate wire totaling $61,674.91 to an account controlled by **KADIKILO** at PNC. The PNC bank account had been opened under **KADIKILO**'s name in August 2016 in Harris County, Texas.

16. After Victim 3's funds were fraudulently received in **KADIKILO**'s PNC account, the funds were laundered in a manner designed to conceal the source, ownership, and control of the fraudulently obtained funds. Prior to receiving Victim 3's funds, **KADIKILO**'s PNC bank account had a balance of $20.58 on July 30, 2021. After receiving Victim's 3 funds, **KADIKILO** withdrew $3,000.00

of Victim 3's funds from his PNC bank account on August 2-3, 2021, via two Zelle payments to "MBA ENTERTAINMENT LLC." Additionally, on August 3, 2021, **KADIKILO** made two withdrawals from his PNC bank account of $14,000 and $37,000 of Victim's 3 funds. **KADIKILO** then made a series of ATM withdrawals and debit card purchases, and ultimately overdrew the balance of the PNC account, fully depleting Victim 3's funds.

*Third Automobile Dealership BEC*

17.  By at least in or about January 2022, co-conspirators of **MBA** had obtained unauthorized access to the business email account of an employee ("EMP-4") of Company D, an automobile dealership in Phoenix, Arizona. EMP-4's email was then used to send fraudulent interstate wire instructions to Victim 4, a water well pump and equipment corporation in Fort Worth, Texas, for a payment that Victim 4 owed to Company D.

18.  In response to those fraudulent wire instructions, and believing they were communicating with Company D, on or about January 14, 2022, Victim 4 caused its bank to send an interstate wire totaling $72,879.56 to an account controlled by **SMITH** at PNC Bank. The PNC bank account had been opened by **SMITH** using an assumed name certificate of "Coremet Trading" in August 2021 in Harris County, Texas.

19. After Victim 4's funds were fraudulently received in **SMITHS**'s PNC account, the funds were laundered in a manner designed to conceal the source, ownership, and control of the fraudulently obtained funds. On January 18-19, 2022, **SMITH** withdrew Victim 4's funds from her PNC bank account via cashier's checks of $48,925, $7,600, $1,500, and $2,500 to "MBA PACIFIC LLC." The cashier's checks were deposited in an account controlled by **MBA** at PNC on January 18-21, 2022. **MBA** then directed a portion of Victim's 4 funds to other accounts under the control of co-conspirators.

*Romance Scam*

20. By at least in or about October 2022, co-conspirators of **MBA** had developed a romance scam targeting unsuspecting Victim 5. On or about October 5, 2022, the co-conspirators successfully convinced Victim 5 to send a cashier's check of $49,000 of Victim 5's funds to an address in Houston, Texas, associated with **MBA**. The cashier's check was deposited into an account controlled by **GOLOVKO** at PNC Bank. The PNC bank account had been opened by **GOLOVKO** using an assumed name certificate of "Tesk Industry" in August 2022 in Harris County, Texas.

21. On or about December 8, 2022, the co-conspirators successfully convinced Victim 5 to send a second cashier's check of $40,000 of Victim 5's funds to an address in Houston, Texas, associated with **MBA**. The second cashier's check was

deposited into an account controlled by **GOLOVKO** at BOA. The BOA bank account had been opened by **GOLOVKO** using an assumed name certificate of "Tesk Industry" in October 2022 in Harris County, Texas.

22. After Victim 5's funds were fraudulently received in **GOLOVKO**'s PNC and BOA accounts, the funds were laundered in a manner designed to conceal the source, ownership, and control of the fraudulently obtained funds. On December 14, 2022, **GOLVOKO** wired $19,000 of Victim 5's funds from **GOLVOKO**'s BOA account to an under the control of co-conspirators. On December 20, 2022, **GOLOVKO** wired $10,000 of Victim 5's funds to an account in the name of "BELLE STATION LLC," which is an account under the control of **MBA**.

All in violation of Title 18, United States Code, Section 1349.

### COUNT TWO
(Conspiracy to Commit Money Laundering, 18 U.S.C. § 1956(h))

Paragraphs 1-22 are incorporated herein by reference in their entirety.

23. From at least in or about 2018 up to and including in or about 2023, in the Southern District of Texas and elsewhere,

**LESLIE CHINEDU MBA (1)
GRACE MORISHO (2)
RODGERS ELIAS KADIKILO (3)
KRISTIN LYNN SMITH (4)
and
ALEXANDRA GOLOVKO (5),**

defendants herein, did knowingly combine, conspire, and agree with other persons known and unknown to the Grand Jury to conduct and attempt to conduct financial transactions – to wit, bank deposits, withdrawals, and transfers – knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity and which, in fact, involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## **NOTICE OF CRIMINAL FORFEITURE**
28 U.S.C. § 2461(c); 18 U.S.C. §§ 981(a)(1)(C) & 982(a)(1)

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the defendants that in the event of conviction of the offense charged in Count One of this Indictment, the United States will seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to the defendants that in the event of conviction of the offense charged in Count Two of this Indictment, the United States will seek forfeiture of

all property, real or personal, involved in money laundering or traceable to such property.

## Money Judgment and Substitute Assets

The United States will seek the imposition of a money judgment against each defendant. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States may seek to forfeit any other property of the defendants in substitution.

A TRUE BILL:

Original Signature on File

_____
FOREPERSON OF THE GRAND JURY

ALAMDAR S. HAMDANI
United States Attorney

By: _____
Karen M. Lansden
Assistant United States Attorney